IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEVON JACKSON,

                              Plaintiff,

        v.                                                                    ORDER

DEBRA GEMPELER, ANTHONY MELI                                  09-cv-602-slc
and JOHN O'DONOVAN,

                              Defendants.

---

        Plaintiff Jevon Jackson claims that defendants violated his First Amendment right to free speech when they disciplined him after he asked to be placed in observation status because he was experiencing a panic attack and feared he might lash out.  Defendant Debra Gempeler gave plaintiff a conduct report for making threats to his cell mate and placed him in disciplinary segregation; defendant Anthony Meli approved Gempeler's decision; defendant John O'Donovan found plaintiff guilty of making a threat and sentenced him to 90 days in disciplinary segregation.  Warden Mike Thurmer reversed the decision, but not before plaintiff had lost his prison job and was transferred to another institution.

        In an order dated September 29, 2010, dkt. 37, I denied defendants' motion for summary judgment with respect to defendants Gempeler, Meli and O'Donovan because, under the undisputed facts in the record, the decision to discipline plaintiff was not reasonably related to a legitimate penological interest, as it was required to be under *Turner v. Safley*, 482 U.S. 78, 89 (1987).  In addition, I rejected defendants' arguments that plaintiff had not suffered a cognizable injury, that defendant Gempeler did not have an "unconstitutional motive" and that defendants Meli and O'Donovan were not personally involved in the alleged constitutional violation.  However, I granted the summary judgment motion as to defendant Thurmer because

he reversed the finding of guilt when the appeal came before him.  Plaintiff did not file his own motion for summary judgment, but I directed defendants to show cause why judgment should not be entered in favor of plaintiff because it seemed doubtful that there were any factual issues left to be tried with respect to liability.

In their response, defendants do not argue that any triable issues remain with respect to the sufficiency of plaintiff's injury, causation or the personal involvement of any of the remaining defendants.  Instead, they argue that a trial is needed to determine whether plaintiff's statement to defendant Gempeler was a threat to his cell mate.  This argument has three premises: (1) "[w]hether a statement is a threat is generally a jury question," dkt. 38, at 1;[1] (2) "determining whether a statement constitutes a threat requires analysis of the context in which the statement was made," *id.*; and (3) "[f]ew facts about the context of [plaintiff's] statements appear in the record," *id.* at 4.

Even if I agree with defendants that it is a question of fact whether a particular statement qualifies as a threat, that in itself would not require a trial.  Under Fed. R. Civ. P. 56, only "genuine" factual disputes may be resolved by a jury.  "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party."  *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).  As I noted in the September 29, 2010 order, the facts adduced at summary judgment point to only one reasonable conclusion: plaintiff was not threatening his cell mate and defendants' decision to punish him was not reasonably related to a legitimate penological interest.  *See* dkt. 37 at 12.

_____

[1] When a court makes this observation in a criminal case, *see, e.g., United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008), it is important to keep in mind that summary judgment does not exist in criminal prosecutions.  *United States v. Thomas*, 150 F.3d 743, 747 (7th Cir. 1998).

I agree with defendants that context is important, but the facts in the summary judgment record about the context of plaintiff's statement supported his position:

- Plaintiff has a verified history of serious mental illness that includes panic attacks;

- DOC psychological staff instructed plaintiff to ask to be placed in observation status when he suffered from a panic attack;

- Plaintiff had been placed in observation status on previous occasions under similar circumstances;

- Plaintiff did not mention his cell mate when he ask defendant Gempeler to put him in observation;

- Plaintiff provided more details about his thoughts only when defendant Gempeler required him to do so;

- When defendant Gempeler asked plaintiff point blank whether he was having violent thoughts about his cell mate, he simply said "who's ever around me in that moment";

- Plaintiff told defendant Gempeler that he "did not have any arguments or altercations with his cellmate."

I treated these facts as undisputed in the September 29 order, a conclusion that defendants do not challenge now. Defendants pointed to no facts in their summary judgment materials suggesting that plaintiff intended to harm his cell mate. It is true, as defendants observe, that plaintiff's statements supported a conclusion that he "might cause harm to" his cell mate if they were left in the same cell, but that cannot be enough to justify a decision to punish plaintiff even under *Turner*'s deferential standard. Punishing a prisoner simply for admitting that he is having a panic attack is like punishing him for admitting that he has tuberculosis. In either case, it is not the speech that creates a situation that might be dangerous to others, but an underlying condition that he fears he cannot control. And, in either case, prison officials would

have a legitimate interest in isolating the dangerous prisoner, but not in punishing him for his speech.

In their response, defendants argue that their own reaction to plaintiff's statement shows that he was making a threat.  That is, plaintiff's statement must have been a threat because they treated it as a threat.  Defendants are correct that a recipient's reaction is one factor to consider under the First Amendment, *Watts v. United States*, 394 U.S. 705, 708 (1969), but this cannot be enough by itself in this circumstance because it would allow prison officials to justify their conduct simply by pointing to it.[2]  Distilled, defendants' position is that "plaintiff's speech qualifies as a threat because we said it does."  *Turner* requires courts to give deference to prison officials, but it does not require courts to accept everything those officials say at face value. *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989) (*Turner*'s "reasonableness standard is not toothless"); *West v. Frank*, 492 F. Supp. 2d 1040, 1048 (W.D. Wis. 2007). ("[I]f the First Amendment is to have any meaning in the prison setting, a reason of 'because we said so' without further support cannot be sufficient to pass constitutional muster.") As I noted in the September 29, 2010 order, "[t]he salient question is not whether defendants have identified a legitimate interest, but whether there is a reasonable nexus between that interest and the decision to punish plaintiff for what he said."

Alternatively, defendants suggest that the summary judgment record was incomplete: "There are no facts in the record about his tone of voice or demeanor.  There are no facts in the record about whether plaintiff had a history of assaulting other inmates."  Dkt. 38, at 5.  This

---

[2]  Perhaps it would be a closer question if plaintiff had made this statement directly to his cell mate, his alleged victim.  Even then it would more akin to a cautionary advisal than a threat, along the lines of "I am trying to get placed on observation status because if my mental illness makes me lose control and you are nearby, then I might hurt you."

argument is speculative: defendants have not submitted an affidavit or any other evidence suggesting that defendant Gempeler actually interpreted plaintiff's statements as a threat because of his tone of voice or his behavioral history.  There is no point in holding a trial to resolve a factual dispute that does not actually exist.  To be cautious and fair, I will give defendants the opportunity to submit any additional evidence they would offer at trial to show that it was reasonable for them to conclude that plaintiff's responses to Gempeler's questions were a true threat, namely a serious expression of his intent to inflict bodily harm upon his cell mate.  *See United States  v. Hoffman*, 806 F.2d 703, 707 (7th Cir. 1986); *see also United States v. Parr*, 545 F.3d 491, 497-500 (7th Cir. 2008)(speaker's subjective intent is a factor in determining whether his statement is a true threat).

Because the deadlines for trial submissions are approaching quickly, I am striking the trial date to give the parties some breathing room.


ORDER

IT IS ORDERED that defendants may have until October 27, 2010 to show cause why judgment should not be entered in favor of plaintiff.  The November 29, 2010 trial date is STRICKEN.  If defendants do not respond by October 27, I will enter judgment in favor of plaintiff and set a new trial date on the question of damages.


Entered this 13th day of October, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

5